UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  0:23-cv-60875-RNS

**BRETT GROVES,**

    Plaintiff,

v.

**LAWNWOOD HEALTHCARE SPECIALISTS LLC** *d/b/a* **AVENTURA TRAUMA SPECIALISTS** and **MEDICREDIT INC,**

    Defendants.
_____/

**SECOND AMENDED COMPLAINT**

Plaintiff Brett Groves ("Plaintiff") sues Defendant Lawnwood Healthcare Specialists LLC *doing business as* Aventura Trauma Specialists and Defendant MediCredit Inc (collectively, the "Defendants") for violations of the Fair Debt Collection Practices Act ("FDCPA") and Florida Consumer Collection Practices Act ("FCCPA").

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court arises under 15 U.S.C. §1692k(d), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

2. Venue in this District is proper because Plaintiff resides here, Defendants transact business here, and the complained conduct of Defendants occurred here.

3. Supplemental jurisdiction exists for the claims arising under FCCPA pursuant to 28 U.S.C. § 1367.

**PARTIES**

4. Plaintiff is a natural person, and a citizen of the State of Florida, residing in Broward County, Florida.

5. Defendant MediCredit Inc ("MediCredit") is a Missouri Corporation, with its principal place of business located in Earth City Missouri.

6. Defendant Lawnwood Healthcare Specialists LLC *doing business as* Aventura Trauma Specialists ("ATS") is a Florida limited liability company, with its principal place of business located in Nashville, Tennessee.

## DEMAND FOR JURY TRIAL

7. Plaintiff, respectfully, demands a trial by jury on all counts and issues so triable.

## ALLEGATIONS

8. On November 18, 2021, Plaintiff suffered an accident and related injuries in the course and scope of Plaintiff's employment that required medical treatment and/or services (the "Work-Injury").

9. On November 26, 2021, and November 27, 2021, ATS provided Plaintiff with a portion of the required medical services needed to treat the Work-Injury, whereby the only medical services provided to Plaintiff by ATS were for the treatment of the Work-Injury.

10. At the time ATS provided its respective medical services to Plaintiff, Plaintiff informed ATS that the sought treatment was for the Work-Injury.

11. ATS charged a fee for the provision of its (ATS's) respective medical services for treatment of the Work-Injury (the "Consumer Debt").

12. The Consumer Debt arose from Plaintiff's work-related accident and injuries.

13. ATS knew that payment of the Consumer Debt was the responsibility of Plaintiff's employer and/or the insurance carrier of Plaintiff's employer because Plaintiff informed ATS prior to ATS providing the underlying medical services, as well as because Plaintiff's medical records

and history, of which ATS reviewed before providing Plaintiff with medical services, explicitly stated that the underlying injury sustained by Plaintiff was a work-place injury.

14. ATS knew that payment of the Consumer Debt was not Plaintiff's responsibility.

15. ATS knew that it did not have any statutory or contractual right to attempt to collect the Consumer Debt from Plaintiff. Despite knowing this, however, ATS began attempting to collect the Consumer Debt from Plaintiff.

16. On a date better known by ATS, ATS sent Plaintiff a letter, internally dated May 03, 2022, in an attempt to collect the Consumer Debt (the "ATS Letter"). Attached as Exhibit "A" is a copy of the ATS Letter.

17. The ATS Letter falsely represents the amount of the Consumer Debt is $2,208.05, as this amount exceeds the amount which ATS is entitled to recover from Plaintiff's employer and/or employer's insurance carrier under Florida's worker compensation laws.

18. The ATS Letter is an attempt to collect the Consumer Debt from Plaintiff.

19. Upon receipt of the ATS Letter, Plaintiff became confused and upset upon reviewing it. Plaintiff had notified ATS that Plaintiff was seeking treatment for the Work-Injury, whereby Plaintiff's employer, not Plaintiff, was responsible for payment of the Consumer Debt.

20. Thereafter, and despite knowing that it did not have any statutory or contractual right to attempt to collect the Consumer Debt from Plaintiff, ATS contracted with MediCredit to collect, or attempt to collect, the Consumer Debt from Plaintiff.

21. On a date better known by Defendants, MediCredit began attempting to collect the Consumer Debt from Plaintiff.

22. MediCredit is a business entity engaged in the business of soliciting consumer debts for collection.

23. MediCredit is a business entity engaged in the business of collecting consumer debts.

24. MediCredit regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

25. MediCredit is registered with the Florida Office of Financial Regulation as a "Consumer Collection Agency."

26. MediCredit's "Consumer Collection Agency" license number is CCA0900581.

27. MediCredit maintains all the records specified in Rule 69V-180.080, Florida Administrative Code.

28. The records specified by Rule 69V-180.080, Florida Administrative Code, of which MediCredit does maintain, are current to within one week of the current date.

29. For MediCredit's "Consumer Collection Agency" license to remain valid, MediCredit is required to maintain, *at minimum*, all records specified in Rule 69V-180.080, Florida Administrative Code, and keep such records current within one week of the current date.

30. Rule 69V-180.080(3)(e) of the Florida Administrative Code commands that MediCredit *shall* maintain: "[t]he debtor's account of activity disclosing… a record of payments made by the debtor, including the date received and the amount and balance owing."

31. Rule 69V-180.080(9)(a)-(b) of the Florida Administrative Code commands that MediCredit *shall* maintain: "basic information about the debt including, at minimum… [d]ocumentation of the debt provided by the creditor," as well as "[t]he date the debt was incurred and the date of the last payment."

32. On a date better known to MediCredit, MediCredit sent a letter, internally dated October 21, 2022, to Plaintiff (the "MC Letter") in an attempt to collect the Consumer Debt. Attached as Exhibit "B" is a copy of the MC Letter.

33. The MC Letter falsely represents the amount of the Consumer Debt is $3,397.00, whereby in addition to exceeding the amount sought by ATS in the ATS Letter, the MC Letter also demands an amount in excess of what ATS is entitled to recover from Plaintiff's employer and/or employer's insurance carrier under Florida's worker compensation laws.

34. The MC Letter is a communication from MediCredit to Plaintiff in connection with the collection of a debt.

35. The MC Letter is a communication from ATS, by and through MediCredit, to Plaintiff in connection with the collection of a debt.

36. The MC Letter represents an action to collect a debt by MediCredit.

37. The MC Letter represents an action to collect a debt by ATS by and through MediCredit.

38. The MC Letter is an attempt to collect the Consumer Debt from Plaintiff by MediCredit.

39. The MC Letter is an attempt to collect the Consumer Debt from Plaintiff by ATS by and through MediCredit.

40. Upon Plaintiff's receipt of the MC Letter, Plaintiff reviewed the MC Letter. In so doing, Plaintiff realized that the debt sought by the MC Letter, *i.e.*, the Consumer Debt, arose from treatment afforded to Plaintiff on November 26, 2021, and November 27, 2021, for the workplace injury sustained by Plaintiff.

41. Upon this realization, Plaintiff became visibly upset and emotionally distraught, as not only was Plaintiff being pursued for a debt that was not Plaintiff's responsibility, but the amount had increased from $2,208.05 to $3,397.00. Moreover, despite having been so egregiously injured at work that Plaintiff needed to seek medical treatment, the MC Letter subjected Plaintiff to further undue pain and suffering by way of unlawful debt collection and wasted Plaintiff's time.

42. As a result of the MC Letter, Plaintiff wasted a significant amount of time by way of the time spent reviewing the MC Letter, as well as the time spent worrying over the implications of receiving it (the MC Letter).

43. Plaintiff would not have wasted time reading the MC Letter, Plaintiff would not have wasted time trying to understand why Plaintiff was the target of wrongful and otherwise unlawful collection activity, and Plaintiff would not have wasted time deliberating what to do about the MC Letter. At minimum, all such wasted time would have been completely avoided had MediCredit not sent the MC Letter to Plaintiff – but such is not the case – and the time MediCredit caused Plaintiff to waste cannot be undone.

44. More importantly, had the MC Letter not falsely represented payment of the Consumer Debt as Plaintiff's direct, personal problem, Plaintiff's suffering would have been limited to the Work Injury – but such is also not the case.

45. Notwithstanding the time which the MC Letter caused Plaintiff to waste, MediCredit, by and through the MC Letter, inflicted frustration, pain, confusion, and distrust, as well as emotional turmoil, onto Plaintiff, of which compound what Plaintiff endured due to the Work Injury. All of the aforementioned injuries suffered by Plaintiff constitute a concrete harm.

46. Attached as Exhibit "C" is a copy of a declaration from Plaintiff in support of the concrete harm sustained by Plaintiff as a result of the unlawful conduct of Defendants.

## COUNT 1
## <u>VIOLATION OF 15 U.S.C. § 1692e(2)(A)</u>
(*against MediCredit*)

47. Plaintiff incorporates by reference ¶¶ 7-46 this Second Amended Complaint.

48. Pursuant to Fla. Stat. § 440.13(2)(a), an injured employee is entitled to "such medically necessary remedial treatment, care, and attendance for such period as the nature of the injury or the process of the recovery may require…."

49. Pursuant to Fla. Stat. § 440.13(13)(a), "[a] health ATS may not collect or receive a fee from an injured employee within this state, except as otherwise provided by this chapter. Such providers have recourse against the employee or carrier for payment for services rendered in accordance with this chapter."

50. An employee is shielded from liability in any dispute between the employer or carrier and health ATS regarding reimbursement for the employee's authorized medical or psychological treatment. *See generally* Fla. Stat. § 440.13.

51. Section 1692e of the FDCPA prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. The sixteen subsections of § 1692e set forth a non-exhaustive list of practices that fall within this ban, including, but not limited to: "*[t]he false representation of the character, amount, or legal status of any debt*." 15 U.S.C. § 1692e(2)(A). (emphasis added).

52. As stated above, MediCredit sent the MC Letter to Plaintiff in an attempt to collect the Consumer Debt. The MC Letter falsely represents that Plaintiff is responsible for the repayment of the Consumer Debt. Here, Plaintiff is not liable or otherwise responsible for the payment of the medical services rendered by ATS, as such medical services were rendered to Plaintiff as a result of a work-related injury sustained by Plaintiff.

53. MediCredit by and through the MC Letter, falsely represents the character of the Consumer Debt, *in that*, the MC Letter falsely represents Consumer Debt as a debt which Plaintiff is solely responsible and/or otherwise obligated to pay.

54. Further, by and through the MC Letter, MediCredit *falsely* represents the amount of the Consumer Debt, *in that*, the amount sought by the MC Letter exceeds the amount which ATS is entitled pursuant to the fee schedules and/or guidelines for services rendered to injured workers such as Plaintiff. Additionally, the MC Letter also unlawfully attempts to collect an amount from Plaintiff which was greater than the amount which ATS sought to collect from Plaintiff by and through the ATS Letter.

55. Thus, by and through the MC Letter, MediCredit violated § 1692e(2)(A) of the FDCPA by falsely representing the *character* of the Consumer Debt, as well as by falsely representing the *amount* of the Consumer Debt.

56. WHEREFORE, Plaintiff, respectfully, requests this Court to enter a judgment against MediCredit, awarding Plaintiff the following relief:

    (a)    Actual damages as provided by 15 U.S.C. § 1692k;

    (b)    Statutory damages as provided by 15 U.S.C. § 1692k;

    (c)    Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k; and

    (d)    Any other relief that this Court deems appropriate under the circumstances.

**COUNT 2**
**VIOLATION OF FLA. STAT. § 559.72(9)**
(*against ATS*)

57. Plaintiff incorporates by reference ¶¶ 7-46 this Second Amended Complaint.

58. Pursuant to Fla. Stat. § 440.13(2)(a), an injured employee is entitled to "such medically necessary remedial treatment, care, and attendance for such period as the nature of the injury or the process of the recovery may require…."

59. Pursuant to Fla. Stat. § 440.13(13)(a), "[a] health care provider may not collect or receive a fee from an injured employee within this state, except as otherwise provided by this chapter. Such providers have recourse against the employee or carrier for payment for services rendered in accordance with this chapter."

60. An employee is shielded from liability in any dispute between the employer or carrier and health care provider regarding reimbursement for the employee's authorized medical or psychological treatment. *See generally* Fla. Stat. § 440.13.

61. Pursuant to § 559.72(9) of the FCCPA, in collecting consumer debts, no person shall: "*[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.*" Fla Stat. § 559.72(9) (emphasis added).

62. Here, ATS knew that the Consumer Debt was the result of an accident and injuries sustained by Plaintiff in the course and scope of Plaintiff's employment. ATS knew it could not collect or receive a fee from an injured employee within the state of Florida except as otherwise explicitly permitted by Florida statute, and ATS knew that an employee, such as Plaintiff, is shielded from liability in any dispute between the employer or carrier and health care provider regarding reimbursement for the employee's authorized medical or psychological treatment.

63. Simply put, despite knowing that it did not have any entitlement or authority to collect the Consumer Debt from Plaintiff directly, ATS mailed the ATS Letter to Plaintiff in an attempt to collect the Consumer Debt. Moreover, ATS further proceeded to contract with

MediCredit to collect the Consumer Debt from Plaintiff, of which resulted in the MC Letter being sent to Plaintiff, by and through MediCredit on behalf of ATS, in an attempt to collect the Consumer Debt.

64. As such, by attempting to collect the Consumer Debt from Plaintiff by and through the ATS Letter, as well as the MC Letter, ATS violated Fla. Stat. § 559.72(9).

65. Due to ATS's aforementioned violation of the FCCPA, Plaintiff has suffered actual damages, including but not limited to mental suffering, anguish, loss of income, and personal and/or financial credibility, whereby Plaintiff in entitled to relief for such, in addition to statutory damages, attorney's fee and costs.

66. WHEREFORE, Plaintiff, respectfully, requests this Court to enter a judgment against ATS, awarding Plaintiff the following relief:

(a) Statutory and actual damages as provided under Fla. Stat. §559.77(2);

(b) Costs and reasonable attorneys' fees pursuant to Fla. Stat. §559.77(2); and

(c) Any other relief that this Court deems appropriate under the circumstances.

DATED: July 27, 2023

Respectfully Submitted,

 /s/ Thomas Patti
**THOMAS PATTI, ESQ.**
Florida Bar No. 118377
E-mail:   Tom@pzlg.legal
**VICTOR ZABALETA, ESQ.**
Florida Bar No. 118517
E-mail:   Victor@pzlg.legal
PATTI ZABALETA LAW GROUP
3323 Northwest 55th Street
Fort Lauderdale, Florida 33309
Phone:    561-542-8550

*COUNSEL FOR PLAINTIFF*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 27, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

    /s/ Thomas J. Patti
**THOMAS J. PATTI, ESQ.**
Florida Bar No.: 118377